**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF CAMDEN**

| IN RE: Clement S. Leslie | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number: 23-12337-JNP |

**MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT**

<u>ORDER GRANTING RELIEF FROM STAY</u>

The Motion of Petitioner, Mill Village Gardens NJ, LP TA Mill Village Gardens Apartments, requesting Relief from the Automatic Stay provided for by Section 362(a) of the Bankruptcy Code is GRANTED.

It is further ORDERED that Petitioner is Granted leave to proceed with an action for possession of the property and/or eviction of the Debtor.

BY THE COURT

_____ J.

Notices sent to:

| | |
|---|---|
| Jénel R. Marraccini, Esq.<br>COHEN & WILLWERTH, P.C.<br>660 Second Street Pike<br>Southampton, PA  18966 | Seymour Wasserstrum<br>Law Offices of Seymour Wasserstrum<br>205 West Landis Avenue<br>Vineland, NJ 08360 |
| United States Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | Isabel C. Balboa<br>Chapter 13 Standing Trustee<br>Cherry Tree Corporate Center<br>535 Route 38 - Suite 580<br>Cherry Hill, NJ 08002 |

## LOCAL BANKRUPTCY FORM 9014-3

## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF CAMDEN

| IN RE: Clement S. Leslie | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number: 23-12337-JNP |

\* \* \* \* \*

## NOTICE OF MOTION, RESPONSE DEADLINE
## AND HEARING DATE

Movant Mill Village Gardens NJ, LP TA Mill Village Gardens Apartments by and through its attorney, Jénel R. Marraccini, Esquire, has filed a "Motion for Relief from the Automatic Stay to permit Mill Village Gardens NJ, LP TA Mill Village Gardens Apartments to Proceed with an Eviction for at 301 N Wade Blvd, Unit 707, Millville, New Jersey 08332" with the court for leave to bring action for possession of the property and/or eviction of the Debtor.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult an attorney.)

1.    If you do not want the court to grant the relief sought in the motion or if you want the court to consider your views on the motion, then on or before July 3, 2023 with court. with the Clerk of the Court, with a copy sent to Petitioner's attorney, at the following addresses:

| Office of the Clerk | Jénel R. Marraccini, Esquire |
|---|---|
| United States Bankruptcy Court | COHEN MARRACCINI, LLC |
| U.S. Post Office and Courthouse | 660 Second Street Pike |
| 401 Market Street | Southampton, PA  18966 |
| Camden, NJ 08101 | Phone No. (215) 887-8100 |
| 609-361-2300 | |

If you mail your answer to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated above; and

You must also mail copies of your response to the following trustees:

|  |  |
|---|---|
| Isabel C. Balboa | U.S. Trustee |
| Standing Chapter 13 Trustee | U.S. Department of Justice |
| Cherry Tree Corporate Center | Office of the U.S. Trustee |
| 535 Route 38 - Suite 580 | One Newark Center, Suite 2100 |
| Cherry Hill, NJ 08002 | Newark, NJ 07102 |
| (856) 663-5002 | 973-645-3014 |

    2. If you or your attorney do not take the steps outlines above, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting said relief.

    3. A hearing on the motion is scheduled to be held before the **_Honorable Jerrold N. Poslusny Jr._** on July 11, 2023 at 11 a.m. in Courtroom 4C at the Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, NJ 08101. Unless the court orders otherwise, the hearing on this contested matter will be an evidentiary hearing at which witnesses may testify with respect to disputed material factual issues in the manner directed by Rule 9014(d) of the Federal Rules of Bankruptcy Procedure. (Please note that this hearing is likely to be held telephonically through Court Solutions. Please see https://www.njb.uscourts.gov/judges-info/hearing-dates/judge-jerrold-n-poslusny for more information regarding Judge Poslunsy's procedures for holding and attending telephonic hearings.)

    4. You may contact the Bankruptcy Clerk's Office at 215-408-2800 to find out whether the hearing has been cancelled because no one filed an answer.

Date: June 15, 2023

BY:    COHEN MARRACCINI, LLC
/s/ Jénel R. Marraccini
_____
JÉNEL R. MARRACCINI, ESQUIRE
Attorney for Movant
660 Second Street Pike
Southampton, PA  18966
(215)887-8100

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF CAMDEN**

| IN RE: Clement S. Leslie | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number *23-12337-JNP* |

**MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT
MILL VILLAGE GARDENS NJ, LP TA MILL VILLAGE GARDENS APARTMENTS
TO PROCEED WITH AN EVICTION FOR
301 N Wade Blvd, Unit 707, Millville, New Jersey 08332**

Petitioner, Mill Village Gardens NJ, LP TA Mill Village Gardens Apartments, by and through their attorney, Jénel R. Marraccini, Esquire, moves this Court for an Order granting Relief From the Automatic Stay provided for by 11 U.S.C. Section 362 and in support thereof avers the following:

1. The Petitioner is the owner of the property located at 301 N Wade Blvd, Unit 707, Millville, New Jersey 08332 where the Debtor resides.

2. Clement S. Leslie is the Debtor in the above-entitled case under Chapter 13 of the Bankruptcy Code pending in this Court.

3. On March 22, 2023, the above-named Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code in this court.

4. Subsequent to the filing of the Petition for Relief in Bankruptcy, the Debtor has not paid rent in the following amounts to the Petitioner herein. After the filing of the Petition for Relief in Bankruptcy, Debtor's payment history:

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 04/01/23 | Rent (04/2023) | $1,400.00 | | $1,400.00 |
| 04/01/23 | Pay with Rent Insurance | $14.50 | | $1,414.50 |
| 04/01/23 | Deposit Waiver | $34.00 | | $1,448.50 |
| 04/06/23 | Late Charge | $75.00 | | $1,523.50 |
| 05/01/23 | Rent (05/2023) | $1,400.00 | | $2,923.50 |
| 05/01/23 | Pay with Rent Insurance | $14.50 | | $2,938.00 |
| 05/01/23 | Deposit Waiver | $34.00 | | $2,972.00 |
| 05/06/23 | Late Charge | $75.00 | | $3,047.00 |
| 06/01/23 | Rent (06/2023) | $1,400.00 | | $4,447.00 |
| 06/01/23 | Pay with Rent Insurance | $14.50 | | $4,461.50 |
| 06/01/23 | Deposit Waiver | $34.00 | | $4,496.50 |
| 06/06/23 | Late Charge | $75.00 | | $4,571.50 |

5. In addition, due to Debtor's failure to pay the aforementioned post-petition rent payments, Petitioner herein has had to incur $750.00 in legal fees and costs, which Debtor is responsible for in accordance with the parties' lease agreement.

6. The Debtor does not have the means of paying her rent and the Petitioner is without adequate protection.

7. Debtor continues to have the use of the apartment "Rent-Free" has no right to remain therein without paying rent.

WHEREFORE, Petitioner moves this Court for an Order Granting Relief from the Automatic Stay provided for by 11 U.S.C. Section 362 and permitting Petitioner to proceed with an action for possession of the leased premises.

 Respectfully submitted,
 COHEN MARRACCINI, LLC

 /s/ Jénel R. Marraccini

BY: _____
 JÉNEL R. MARRACCINI, ESQUIRE
 Attorney for Movant
 660 Second Street Pike
 Southampton, PA  18966
 (215)887-8100

COHEN  MARACCINI,  LLC
JÉNEL R. MARRACCINI, ESQ.
MICHAEL ADLER, ESQ.
660 Second Street Pike
Southampton, PA 18966
Telephone No. (215) 887-8100
Mill Gardens NJ LP

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF CAMDEN

| IN RE: Clement S. Leslie | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number: *23-12337-JNP* |

### CERTIFICATION OF PETITIONER JOSH GREENBERGER IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Meredith C. Waters, certify the following:

1. I am the Multi- Site Assistant Property Manager for the property located at 301 N Wade Blvd, Unit 707, Millville, New Jersey 08332 Debtor Clement S. Leslie currently resides at the Premises under the terms of a residential lease. A true and correct copy of the residential lease is enclosed herewith as Exhibit A.

2. I am familiar with Debtor's rental payment history because I am Debtor's landlord and Debtor is my tenant.

3. On March 22, 2023, the above-named Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code in this Court. (Docket No. 1)

4. I am seeking relief from the automatic stay to pursue my state court rights due to Debtor's nonpayment of rent.

5. The amount of Debtor's rent per month is $1,400.00.

6. After the filing of the Petition for Relief in Bankruptcy, Debtor's payment history

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 04/01/23 | Rent (04/2023) | $1,400.00 | | $1,400.00 |
| 04/01/23 | Pay with Rent Insurance | $14.50 | | $1,414.50 |
| 04/01/23 | Deposit Waiver | $34.00 | | $1,448.50 |
| 04/06/23 | Late Charge | $75.00 | | $1,523.50 |
| 05/01/23 | Rent (05/2023) | $1,400.00 | | $2,923.50 |
| 05/01/23 | Pay with Rent Insurance | $14.50 | | $2,938.00 |
| 05/01/23 | Deposit Waiver | $34.00 | | $2,972.00 |
| 05/06/23 | Late Charge | $75.00 | | $3,047.00 |
| 06/01/23 | Rent (06/2023) | $1,400.00 | | $4,447.00 |
| 06/01/23 | Pay with Rent Insurance | $14.50 | | $4,461.50 |
| 06/01/23 | Deposit Waiver | $34.00 | | $4,496.50 |
| 06/06/23 | Late Charge | $75.00 | | $4,571.50 |

7. Post-petition, Debtor owes rent totaling $4,571.50 which represents unpaid rent for three (3) full months.

8. Debtor's failure to pay rent is cause for relief from the automatic stay.

9. Through this motion, I request relief from the automatic stay so I may initiate a landlord-tenant action in New Jersey Superior Court seeking possession of the Premises and a Warrant of Removal of Debtor.

I certify under penalty of perjury that the foregoing statements made by me are true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 6/13/2023

Meredith C. Waters
Representative for Mill Gardens NJ LP

# EXHIBIT "A"

# APARTMENT LEASE CONTRACT

**THIS IS A LEGALLY BINDING LEASE THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE LEASE. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.**

Date of Lease Contract: __October 14, 2022__
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "Lease") is between *you,* the resident(s) *(list all people signing the Lease Contract):*

Clement Leslie

and *us*, the owner: **Mill Gardens NJ, LP**

*(name of apartment community or title holder).* You've agreed to rent Apartment No. __0707__, at __301 N. WADE BLVD__ _(street address)_ in __Millville__ _(city)_, New Jersey, __08332__ _(zip code)_ (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us.

**FLOOD ZONE.** We are required to advise you if your apartment is in a flood zone pursuant to N.J.S.A. 46:8-50 *(check one)*:

- ☐ Your apartment is in a flood zone.
- ☒ Your apartment is not in a flood zone.

**MANAGEMENT COMPANY WEBSITE.** The internet website address of the management company that manages the building is: **www.hgliving.com/apartments/nj/millville/mill-village/**.

**PAGINA ELECTRONICA DE LA COMPAÑIA INMOBILIARIA.** La dirección de la página electrónica de la compañía inmobiliaria es: **www.hgliving.com/apartments/nj/millville/mill-village/**.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

No one else may occupy the apartment. Occupants are not residents and may not assume the Lease.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __14th__ day of __October__, __2022__, and ends at 11:59 pm the __13th__ day of __October__, __2023__. This Lease Contract will automatically renew month-to-month unless: (1) we give you written notice(s) of termination that may include a rent increase or other reasonable contract changes (within the period(s) required by law); or (2) you give us __60__ days notice of your intent to terminate the lease and move out.

**4. SECURITY DEPOSIT.** Unless modified by addenda, or Executive Order, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__, due on or before the date this Lease Contract is signed. **Interest earned on your deposit will be treated in accordance with N.J.S.A. 46:8-19.**

**The name and address of the financial institution where your security deposit will be held is:** __Bank of America__

**The type of account is (i.e., money market, CD, or special security deposit account)** __Interest Bearing__

**The current rate of interest on that account is** __0.18%__ **(may vary)**.

The security deposit shall be deemed additional rent.

**5. KEYS.** You will be provided _____ apartment key(s), _____ mailbox key(s), _____ FOB(s), and/or __0__ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ __1400.00__ per month for rent, payable in advance and without demand:

- ☐ at the on-site manager's office, or
- ☒ at our online payment site (not mandatory), or
- ☒ at __www.HGLiving.com/Resident-Services or Zego Pay App__

Prorated rent of $ __812.90__ is due for the remainder of *(check one)*: ☒ 1st month or ☐ 2nd month, on _____, _____.

Otherwise, you must pay your rent on or before the 1st day of each month in advance (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by law. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the __5th__ day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☒ a flat rate of $ __75.00__

or ❑ _____ % of your total rent due, subject to applicable New Jersey law, unless you are elderly or disabled and entitled to grace periods under state statutes. You'll also pay a charge of $ __50.00__ for each returned check or rejected electronic payment, plus a late charge. All charges due pursuant to any provision of this Lease, including this section 6 and pursuant to any addendum, are "additional rent." If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. All payment obligations under this Lease Contract shall constitute additional rent under this Lease Contract.

7. **UTILITIES.** We'll pay for the following items, if checked:
   ☒ water  ☒ gas  ❑ electricity  ❑ cable TV
   ☒ wastewater  ☒ trash  ❑ master antenna
   ❑ other _____

   You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. The owner reserves the right (but has no obligation) to pay any unpaid utility bills which are the obligation of the resident, and if such payment is made, such sums become due immediately as additional rent.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, pest infestation, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

   In addition, we urge all residents, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

   We ☒ require ❑ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like. At our option, if we require renter's insurance and you do not provide proof of insurance within _____ days after our request for proof of insurance, you will incur a monthly fee of $ _____, as additional rent, until you obtain insurance as required by this provision. If no box is checked, renter's insurance is not required.

   Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ❑ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law. In addition, you will be obligated to indemnify and hold the owner harmless from any claim that would have been covered under personal liability insurance.

   Renters Insurance: In compliance with P.L. 1974, Chapter 48 (C. 46:8-39), Tenant is advised that crime insurance through the Federal Crime Insurance Program of Title 6 of the Housing & Urban Development Act of 1970 is available to the Tenant. Tenant may make application for such insurance from its own insurance agent. In addition, each Tenant is required to obtain "Renters" insurance.

9. **LOCKS AND LATCHES. What We Provide.** New Jersey law requires that we provide (at no cost to you) the following, when occupancy begins: (1) a medium duty dead latching lockset as specified in N.J.A.C. § 5:10-19.2; or (2) a dead bolt lock separate from the latch set; (3) a chain door guard; and (4) a peephole. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in. We may also keep a key to your apartment for access to your apartment in the event of an emergency that poses an immediate threat to the safety or health of persons using or near the premises or as otherwise provided under law. You may not change the locks without our written permission.

   All openable windows, sliding doors, basement windows, and windows opening onto exterior stairways, fire escapes, porches, terraces, balconies, or other specified areas will be equipped with a locking device under N.J.A.C. § 5:10-19.2.

   **Payment.** You will pay for (as additional rent): (1) rekeying (or replacement keys) that you request or is required if you changed your locks without our written permission (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done unless state statute authorizes advance payment. You also must pay for (as additional rent) additional or changed devices you request, in advance or afterward, at our option.

## Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

    __See Additional Special Provisions__
    _____
    _____
    _____
    _____

    See any additional special provisions.

11. **DAMAGES AND REIMBURSEMENT.** Under New Jersey Law, you can be evicted for and will be responsible for reimbursing us for: loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your invitees, guests or occupants, as additional rent. **We are not liable for, and you must pay for as additional rent: repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.** We may require payment at any time, including advance payment of repairs for which you're liable as additional rent. Delay in demanding sums you owe is not a waiver.

12. **PROPERTY LEFT IN APARTMENT.** For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

    **Removal After Surrender, Abandonment, or Eviction.** After providing notice under N.J. Stat § 2A:18-73, we or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 52).

**Storage.** We will store property left in the Apartment for thirty-three (33) days after sending an Abandoned Property Letter.

**Redemption.** If we've stored property as authorized by New Jersey law, you may redeem the property by paying all costs incidental to storage and removal of your property subject to N.J. Stat § 2A:18-77. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away, subject to N.J. Stat § 2A:18-78., or give to a charitable organization all items of personal property that are left in the apartment after surrender, abandonment, or eviction if you have not responded to our notice within the period provided for under N.J. Stat § 2A:18-73. Animals removed after surrender, abandonment, or eviction may be turned over to local authorities or humane societies. Property not thrown away may be disposed of only by sale according to N.J. Stat § 2A:18-78.

13. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends unless allowed under law.

    If we give you written notice of a rent increase or a new Lease Contract with reasonable changes effective when the Lease Contract term or renewal period ends, and the notice complies with applicable New Jersey law, you agree to pay any rent increase and to sign the new Lease Contract unless you have given us a written move-out notice in accordance with Paragraph 47 (Move-Out Notice) and you move-out by the expiration date of this Lease Contract. If you fail to give written notice as required under Paragraph 47 (Move-Out Notice) and if you fail to sign the new Lease Contract, we reserve the right to terminate your tenancy under N.J.S.A. 2A:18-61.1 (i). Acceptance of any rent shall not be deemed a waiver of the Owner's termination rights.

    The new modified Lease Contract and rent increase will begin on the date stated in the notice (without the necessity of your signature) unless you give us written move-out notice as required under Paragraph 47 (Move-Out Notice).

14. **DELAY OF OCCUPANCY.** Subject to applicable New Jersey consumer laws, if occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, pursuant to this section 14, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

    If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

    (1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

    (2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

15. **AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

16. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

17. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules during the term hereof and you agree they will be binding on you, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

18. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps without our prior written approval; cook on balconies or outside; use propane tanks; or solicit business or contributions. Conducting any kind of business (including child care services or pet-sitting services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

    We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area

or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

19. **PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; stalking, following other occupants, employees and/or guests; disrupting our business operations; creating offensive odors; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm on any part of the apartment premises, including common areas; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials or explosive devices and materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others which are false or made in bad faith.

20. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed under an appropriate statute and you agree to hold us harmless for any claims relating to the same. A vehicle is unauthorized or illegally parked in the apartment community if it:

    (1) has a flat or other condition rendering it inoperable; or
    (2) is on jacks, blocks or has wheel(s) missing; or
    (3) has no current license plate, registration and/or no current inspection sticker; or
    (4) takes up more than one parking space; or
    (5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
    (6) is parked in a marked handicap space without the legally required handicap insignia; or
    (7) is parked in a space marked for manager, staff, or guest at the office; or
    (8) blocks another vehicle from exiting; or
    (9) is parked in a fire lane or designated "no parking" area; or
    (10) is parked in a space marked for other resident(s) or unit(s); or
    (11) is parked on the grass, sidewalk, or patio; or
    (12) blocks garbage trucks from access to a dumpster.

21. **RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 14, 22, 30 and 48, or N.J.S.A. 46:8-9.1, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, or bad health.

22. **MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

23. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices.

    **Smoke and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries. You must immediately report smoke detector and carbon monoxide detector malfunctions to us. In addition, you must test them every month. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for our actual damages. If you disable or damage the smoke detector or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others, as additional rent, for any loss, damage, or fines from fire, smoke, or water.

    **Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. During freezing weather, you must (1) ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit); (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable, as additional rent, for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

    **Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

24. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties, except those imposed by applicable state law.

    You'll be given an Inventory and Condition form on or before move-in. You must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

    You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, plumbing, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the

apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, dryers, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing.

You may not install a satellite dish or antenna unless it complies with Federal Law and FCC regulations and the attached Satellite Addendum.

You agree not to alter, damage, or remove our property, including any applicable alarm systems, smoke and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**25. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST— FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. You may be entitled to terminate this Lease Contract in the event of fire damage under N.J.S.A. 46:8-7. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**26. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment Community unless we've so authorized in writing. You must permanently remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you, as additional rent, for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the eviction procedures of Paragraph 31.

**27. WHEN WE MAY ENTER.** If you or any guest or occupant consents, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key if:

(1) 24 hours' written notice of the entry is given to you, excluding emergencies; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector or carbon monoxide detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors, fire marshals, lenders, appraisers, contractors, prospective buyers, or insurance agents.

(3) Your apartment is subject to inspection by the Owner or its agents. In addition, your apartment may be subject to inspection by the New Jersey Department of Community Affairs Bureau of Housing or its representatives. We will give you notice prior to such inspection unless the inspection does not require notice under law. In instances where notice is required and you fail to express any objection in writing to the inspector's entering your apartment either to the Bureau of Community Affairs, its representatives, or to us or our managing agents, it will be deemed that you have consented to the inspection if we have a key to your apartment.

(4) We may need access to your apartment to make any required repairs or replacements required to abate any violations or potential violations. We will give you notice if it is not an emergency. You shall be responsible for the costs, charged as additional rent, of any repairs or replacements due to any violations including, but not limited to, Lease Contract violations, violations caused by your actions or inactions and those of your occupants or guests. If you fail or refuse to consent to grant us access, you will be in breach of this Lease Contract and will be responsible for any fines, penalties or fees levied as a result of same, as additional rent, in addition to all other remedies available under this Lease Contract.

**28. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

## Replacements

**29. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment or granting a right or license to occupy is allowed *only when we expressly consent in writing.* If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reletting charge *will not* be due;
(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and
(3) you *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**30. RESPONSIBILITIES OF OWNER:** We will act with customary diligence to maintain a habitable dwelling unit pursuant to New Jersey law.

If the unit becomes uninhabitable through no fault of your own, you may exercise your remedies under state statute. You must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy.

**31. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the New Jersey Comprehensive Drug Reform Act; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 19; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government. You agree not to do or allow any of this behavior.

**Eviction.** If you breach this lease you will be given written notice to vacate when required by applicable New Jersey laws. Notice may be by: (1) delivery to you or any resident; (2) personal delivery at the apartment to any occupant over 14 years old; (3) certified mail, return receipt requested; or (4) regular mail. After filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings. We reserve our right of re-entry upon your breach of any term, condition of this lease or any community rule or policy.

**Holdover.** Subject to applicable New Jersey law, you or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (3) at our option, we may extend the Lease Contract term—for up to one month from the date of notice of Lease Contract extension—by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be owed including rent, additional rent and damages. Upon your default, we have all other legal remedies, including Lease Contract termination. You are responsible for all rent and fees under the Lease Contact until the termination of the Lease Contract, or until the unit is re-rented. You shall also pay all attorney and filing costs. Attorney and filing costs shall be considered as additional rent.

**IF THE TENANT IS SUCCESSFUL IN ANY ACTION OR SUMMARY PROCEEDING ARISING OUT OF THIS LEASE, THE TENANT SHALL RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH FROM THE LANDLORD TO THE SAME EXTENT THE LANDLORD IS ENTITLED TO RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH AS PROVIDED IN THIS LEASE.**

## General Clauses

**32. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**33. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

34. **NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

35. **NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given. Fax signatures are binding. All notices must be signed.

36. **SUBORDINATION.** This lease is subject to all present and future ground leases or mortgages that affect the apartment or the premises. Resident shall promptly execute any certificate acknowledging the subordination of this lease that the Owner may request. Resident appoints Owner as the Resident's attorney in fact for the purpose of executing any such certificate for resident.

37. **MISCELLANEOUS.**
    A. Exercising one remedy won't constitute an election or waiver of other remedies.
    B. All remedies are cumulative.
    C. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
    D. This Lease Contract binds subsequent owners.
    E. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
    F. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
    G. Subject to applicable New Jersey law, this Lease Contract is subordinate to existing and future recorded mortgages, at lender's option.
    H. Utilities may be used only for normal household purposes and must not be wasted.
    I. If your electricity is ever interrupted, you must use only battery-operated lighting.
    J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.
    K. This Lease Contract may not be recorded.

38. **WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury. Any action against Owner shall only be filed in the Superior Court of New Jersey, in the county where the premises are located, which Court shall have exclusive and sole jurisdiction of the matter.

39. **WINDOW GUARDS. The owner (landlord) is required by law to provide, install and maintain window guards in the apartment if a child or children 10 years of age or younger is, or will be, living in the apartment or is, or will be, regularly present there for a substantial period of time if the tenant gives the owner (landlord) a written request that the window guards be installed. The owner (landlord) is also required, upon the written request of the tenant, to provide, install and maintain window guards in the hallways to which persons in the tenant's unit have access without having to go out of the building. If the building is a condominium, cooperative or mutual housing building, the owner (landlord) of the apartment is responsible for installing and maintaining window guards in the apartment and the association is responsible for installing and maintaining window guards in hallway windows. Window guards are only required to be provided in first floor windows where the window sill is more than six feet above grade or there are other hazardous conditions that make installation of window guards necessary to protect the safety of children.**

40. **OBLIGATION TO VACATE.** Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration or termination of the lease term without further notice or demand from Owner.

41. **FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

    Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

42. **SMOKE FREE AIR ACT.** You acknowledge and understand that the State of New Jersey has enacted the New Jersey Smoke Free Air Act specifically recognizing the health dangers inherent in environmental tobacco smoke, and second-hand smoke. You further acknowledge and understand that causing the infiltration of second-hand smoke into the common areas of the building and/or into other apartments in the building, constitutes a nuisance and health hazard and is a material infringement on the quiet enjoyment of the other residents in the building and a material violation of your Lease Contract. For the foregoing reasons, you acknowledge and agree that the prevention by you, and your invitees and guests, of the infiltration of second-hand smoke into the common areas of the building and or into other apartments in the building is of the essence to this Lease Contract, and you covenant and agree to take all measures necessary to prevent second-hand smoke from emanating from your apartment and infiltrating the common areas of the building and/or into other apartments in the building. If second-hand smoke infiltrates the common areas or another apartment unit and this causes another tenant to vacate their unit and/or other costs, expenses or damages to the Owner, you will be responsible for all of these costs, expenses and damages. In addition, the Owner shall have the right to evict you from the apartment.

43. **EMINENT DOMAIN.** If any part of the Premises or Building is taken by any governmental agency for public use by condemnation or voluntary conveyances that prevents the use of the Premises, this Apartment Lease Contract shall terminate. Termination shall be effective when the Governmental agency takes possession. Resident shall not have any claim for the value for the remaining term of the Apartment Lease Contract. All payments for the property taken shall belong to Owner.

44. **PRIVATE WATER TESTING ACT** (N.J.S.A. 58:12A-26 et seq.). In the event the water for your apartment is supplied with a potable water supply for which is a private well and testing of the water is not required pursuant to any other State law, the Owner in accordance with the Private Well Testing Act ("Act"), will test the water in accordance with the Act. The Owner shall also provide a written copy of the most recent test results to any new residents. In addition, the Owner provide you in writing any subsequent testing required under the Act.

45. **2-1-1 SOCIAL ASSISTANCE HOTLINE:** You may contact New Jersey's social assistance hotline – NJ 211 – if You need help in understanding and finding available assistance services. You can reach the hotline by dialing "2-1-1" from any landline or cell phone, 24 hours a day, seven days a week. You can also reach the hotline by texting Your zip code to "898-211," chat online at "www.nj211.org," or email the hotline at "info@nj211.org." Language translation and TTY services are offered to any caller. 2-1-1 will help identify with You the best local resources to fit Your individual needs during times of distress or for life's everyday situations.

**LA LÍNEA DIRECTA DE ASISTENCIA SOCIAL 2-1-1:** Si necesita ayuda para entender y encontrar servicios de asistencia social puede comunicarse con la línea directa de asistencia social de New Jersey – NJ 211. Puede usar cualquier teléfono fijo o celular para comunicarse con la línea directamente marcando el "2-1-1," 24 horas al día, siete días a la semana. También puede comunicarse con la línea directa enviando un mensaje de texto con su código postal al "898-211," converse en línea en "http://www.nj211.org," o envíe un correo electrónico a la línea directa a "info@nj211.org." Se ofrecen servicios de traducción y TTY a cualquier persona que lo necesite. El servicio 2-1-1, con usted, le ayudará a identificar los mejores recursos locales que se adapten a sus necesidades individuales durante momentos de dificultad o para las situaciones cotidianas de la vida.

46. **PAYMENTS.** At our option and without notice, we may apply money received (other than any applicable utility payments subject to governmental regulations) first to any of your unpaid obligations collectible as rent, then to current rent regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments, subject to applicable law.

47. **CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

## When Moving Out

48. **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract if you move out early under Paragraph 22, N.J.S.A. 46:8-9.1 or N.J. Stat. § 46:8-7, or any other applicable laws. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

   - We must receive advance written notice of your move-out date. Oral move-out notice will not be accepted and will not terminate your Lease Contract.
   - Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

   YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE.

49. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends. You're prohibited from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for any applicable deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

50. **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

51. **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

52. **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 11; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security alarm charges unless due to our negligence; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in any valid eviction proceeding against you, plus attorney's fees costs, and filing fees actually paid; and other sums due under this Lease Contract.

   You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date.

53. **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll return (via personal delivery, registered or certified mail) your security deposit refund with statutory interest when applicable (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after surrender or abandonment, unless statutes or case law provides otherwise. In the event of a breach of this Lease Contract the above accounting will occur the sooner of (1) 30 days after the expiration date of your lease, or (2) 30 days after we are able to ascertain the final damages.

   You have *surrendered* the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

   You have *abandoned* the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

   Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12), but do not affect our mitigation obligations (paragraph 31).

**Originals and Attachments and Signatures**

**54. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**55. MEGAN'S LAW STATEMENT.** Under New Jersey law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in an area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's law and are unable to obtain such information for you. Upon closing (execution of the lease), the county prosecutor may be contacted for such further information as may be disclosable to you.

**56. ATTORNEY REVIEW.**

1. Study by Attorney

   The Tenant or the Landlord may choose to have an attorney study this lease. If an attorney is consulted, the attorney must complete his or her review of the lease within a three-day period. This lease will be legally binding at the end of this three-day period unless an attorney for the Tenant or the Landlord reviews and disapproves of the lease.

2. Counting the Time

   You count the three days from the date of delivery of the signed lease to the Tenant and the Landlord. You do not count Saturdays, Sundays or legal holidays. The Tenant and the Landlord may agree in writing to extend the three-day period for attorney review.

3. Notice of Disapproval

   If an attorney for the Tenant or the Landlord reviews and disapproves of this lease, the attorney must notify the Broker(s) and the other party named in the lease within the three-day period. Otherwise this lease will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney may but need not also inform the Broker(s) of any suggested revisions in the lease that would make it satisfactory.

**You are legally bound by this document Please read it carefully.**

**Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.**

**Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.**

**Resident or Residents** *(all sign below)*

*[signature]*

**Owner or Owner's Representative** *(signing on behalf of owner)*

*Jessica Lightfoot*

**Name and address of locator service** *(if applicable)*

**Address and phone number of owner's representative for notice purposes**

301 N Wade Boulevard
Millville, NJ 08332
(856) 221-2530

**Date form is filled out** *(same as on top of page 1).*

10/14/2022

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) **Ownership Entities: Mill Gardens NJ, LP. The following paragraphs of the Apartment Lease Contract are amended as follows: PARAGRAPH 13, Any property left or abandoned on the premises after eviction or vacation, becomes the property of the landlord. PARAGRAPH 34, Notice by e-mail is permitted. Rent Payments: We require that payments be made through the resident portal found at www.HGLiving.com/Resident-Services, for convenience and security. Online Payment options include recurring monthly ACH debit, on-demand ACH payments and Credit/Debit Card payments. After two payments are returned for non-sufficient funds or two online payments (ACH, debit/credit) fail to process within a 12-month period, payments for the next six months must be paid by secured funds. This includes CashPay or Credit Cards (like Visa, MasterCard or Discover) (which Fees may apply). Certified Funds will only be accepted if required by law. Key Release: This Community does not release keys to non-lease holders at the request of Residents. Arrangements for key release to designated parties are the sole responsibility of the Resident.**

COHEN MARACCINI, LLC
JÉNEL R. MARRACCINI, ESQ.
660 Second Street Pike
Southampton, PA 18966
Telephone No. (215) 887-8100
melissa@cohenmarraccini.com
Attorneys for Claimant

                        **HEARING DATE:** July 11, 2023
                        **HEARING TIME:** 11 a.m.
                        **LOCATION:** Courtroom 4C at the Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, NJ 08101

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| IN RE: Clement S. Leslie | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number: 23-12337-JNP |

**STATEMENT AS TO WHY NO BRIEF IS NECESSARY**

In accordance with D.N.J. LBR 9013-1(a)(3), it is respectfully submitted that no brief is necessary in the court's consideration of this motion, as it does not involved complex issues of law.

Date: June 15, 2023                    COHEN MARACCINI, LLC

                                    BY: */s/ Jénel R. Marraccini*
                                            JÉNEL R. MARRACCINI, ESQUIRE
                                            Attorney for Petitioner

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| IN RE: Clement S. Leslie | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number: 23-12337-JNP |

## MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT

I hereby certify that a true and correct copy of the foregoing Motion for Relief and Notice of Motion was served on June 15, 2023 via electronic to the following:

Seymour Wasserstrum
Law Offices of Seymour Wasserstrum
205 West Landis Avenue
Vineland, NJ 08360
(856) 696-8300

Isabel C. Balboa
Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38 - Suite 580
Cherry Hill, NJ 08002

U.S. Trustee
US Dept of Justice
Office of the US Trustee
One Newark Center Ste 2100
Newark, NJ 07102

          COHEN MARRACCINI, LLC

BY:   /s/ Jénel R. Marraccini
          _____
          JÉNEL R. MARRACCINI, ESQUIRE
          Attorney for Movant
          660 Second Street Pike
          Southampton, PA  18966
          (215)887-8100